## Combs v. Roark, Administrator.

(Decided December 19, 1924.)

Appeal from Perry Circuit Court.

1. Witnesses—Heir, Devisee, Legatee, or Other Interested Party Cannot Testify on Behalf of Estate as to Decedent's Transactions or Statements.—Under Civil Code of Practice, sections 605, 606, subsection 2, (c), (d), heir, devisee legatee or other interested party cannot testify on behalf of estate as to decedent's transactions or statements.

2. Witnesses—Rule as to Admissibility of Evidence Relating to Decedent's transactions or Statements.—Under Civil Code of Practice, sections 605, 606, subsection 2, (c), (d), where decedent or his agent has testified and died thereafter before final trial, or where one interested in estate has testified in its behalf as to decedent's statements or transactions without objection, adverse party may then testify thereto.

4. Witnesses—Personal Representative Without Pecuniary Interest in Estate May Testify as to Decedent's Transactions and Statements.—Decedent's personal representative, who has no pecuniary interest in estate, may testify on behalf of estate as to decedent's transactions and statements.

4. Witnesses—Parties to Will Contest May Testify as to Testator's Mental Condition.—All parties to will contest may testify as to testator's mental condition, despite Civil Code of Practice, section 606.

5. Witnesses—Testimony Relating to Physical Facts Not Connected with Decedent's Transactions Held Competent.—Testimony of interested persons as to physical facts not connected with transactions of decedent, such as possession of certificates of deposit shortly before decedent's death on which decedent's indorsements were alleged to be forged, was competent.

6. Witnesses—Though Either Decedent's Daughters or their Husbands Could Testify in Administrator's Action, Both Could Not.—Though, if otherwise competent, either decedent's daughters or their husbands could testify in administrator's action to recover certificates of deposit from one of heirs, both could not testify.

7. Executors and Administrators—Entitled to Reduce Assets to Possession and to have Fraudulent Conveyances Canceled.—Decedent's personal representative is entitled to reduce assets of estate to possession, and to have fraudulent conveyances canceled.

8. Executors and Administrators—Banks Issuing Certificates of Deposit Not Necessary Parties to Administrator's Action to Recover Certificates.—Banks which issued certificates of deposit to decedent raising no question as to ownership thereof, were not necessary parties to administrator's action to recover certificates from one of heirs claimed to have converted them.

JESSE MORGAN, F. J. EVERSOLE and J. T. BOWLING for appellant.

J. W. CRAFT, W. H. MILLER and FAULKNER, STANFILL & FAULKNER for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Mrs. Polly Ann Roark died intestate. Her husband qualified as administrator of her estate, and in that capacity sued one of the heirs, a daughter, to recover certain certificates of time deposits, alleging that she had forged her mother's endorsement thereon and converted them to her own use. From a judgment for plaintiff, defendant appeals.

The principal ground of complaint is that the court erred in permitting the plaintiff and other heirs at law, including two daughters and their husbands, to testify as to conversations and transactions had by deceased.

The Code provisions on this question are:

Section 605. "Subject to the exceptions and modifications contained in section 606, every person is competent to testify for himself or another, unless he be found by the court incapable of understanding the facts concerning which his testimony is offered."

Section 606, subsection 2. " . . . No person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by . . . one who is . . . dead when the testimony is offered to be given, except for the purpose and to the extent of

affecting one who is living, and who, when over fourteen years of age and of sound mind, heard such statement, or was present when such transaction took place, or when such act was done or omitted, unless . . . ''

Subsection ''c.'' ''The decedent or a representative of, or some one interested in, his estate, shall have testified against such person, with reference thereto, or,''

Subsection ''d.'' ''An agent of the decedent or person of unsound mind, with reference to such act or transaction, shall have testified against such person, with reference thereto, or be living when such person offers to testify, with reference thereto.''

It is argued that subsections ''c'' and ''d'' were intended for the protection of decedents' estates; that they recognize the right of an interested person to testify on behalf of an estate in a suit to which he is a party, by permitting the adverse party to testify after the former has testified; thus clearly implying an exception in favor of the former.

In such suits those interested in the estates have the option and may testify or not as they deem proper. If this is exercised in the affirmative the door is open to the adverse litigant also to testify, otherwise the statute closes the mouth of the latter, and to give any other construction renders the language of the provision meaningless.

There is authority for this position though the decisions are not harmonious.

McCall v. Burke, 25 Rep. 643, was a suit against the widow and her husband's estate. The widow was permitted to detail a transaction in which her husband participated, and which was the basis of the suit.

The court said:

''The wife cannot testify as to any communication between her and her husband, but she may testify for his estate after his death, to a transaction between him and another which was had in her presence.''

Perhaps the section in controversy was considered, though it was not discussed.

Carpenter v. Rice, 25 Rep. 1705, and Whitley v. Whitley, 26 Rep. 134; Bennett v. Miller, 159 Ky. 109, fol-

low the language of the statute in holding that after a person interested in an estate has testified, the adverse party may also testify; but neither of them discusses the initial right of the interested party to testify in favor of the estate.

It has also been held that the testimony of the adverse party is restricted to the conversation or transaction about which the beneficiary testified.

Howell v. Salt Lick Lumber Co., 121 S. W. 645; Cumberland Coal Co. v. Crowley, 172 Ky. 226; Hopkins v. Faeber, 86 Ky. 223; Whitlow v. Whitlow, 109 Ky. 573; Apperson v. Exchange Bank, 10 Rep. 43; C. & O. Ry. Co. v. Perkins, 127 Ky. 114, are to the effect that the statute applies to persons pecuniarily interested in the result of the suit, whether they are nominal parties or not. All of those cases, however, deal with the evidence of parties who were testifying adversely to an estate.

Moore v. Moore, 30 Rep. 1370, was a suit to cancel a deed which a deceased father had executed to his son. Another son was permitted to testify as to conversations with his father in the absence of defendant, but which he had communicated to defendant at his father's request. The ruling was based on the theory that he was testifying for the estate.

In Ratcliffe v. Daniels, 137 Ky. 59, plaintiff charged Daniels with burning his barn and sued him to recover its value. There was a mistrial, after which Daniels died testate, leaving Jesse Simmons his executrix and sole devisee. In a subsequent trial against the estate Miss Simmons proved an *alibi* for Daniels by showing his whereabouts on the night of the fire. This was held competent on the theory that she was testifying for the estate and not for herself. The court quoted all of subsection 2 *supra;* and cited with approval the following extract from Moore v. Moore:

"While no person may testify for himself as to a transaction with, or act done or omitted to be done by the decedent, the person, although he may be interested in the estate may testify for the decedent's estate and for its protection against one who is living. The statute was not designed to deprive the estate of a decedent of the testimony of a person most likely to be able to protect it."

LeMoyne v. Meadors, 156 Ky. 834, was a suit in ejectment for the recovery of certain lands defendant

had inherited from his father. His brother was permitted to testify for him as to statements made by their deceased father in reference to the boundary lines. If defendant had lost the suit, this witness would have been liable for contribution, but, on the authority of Ratcliffe v. Daniels, it was held that he was testifying, not for himself, but for the protection of the estate, and therefore the evidence was competent.

On the other hand, in Short v. Tinsley, 1 Met. 401, a suit to set aside a trust deed on the ground of fraud, the defendant died pending the action and his widow testified. It was held that her evidence was competent only so far as it did not affect her interest, the court saying:

> "We will . . . regard so much of it as competent as consists of facts to which she deposes of her own knowledge, not derived by communication from her husband, and which only tend to prove fraud in the sale and not to diminish the liability of her husband's estate to Tinsley as one of his creditors."

That case was followed in English v. Cropper, 8 Bush 292, and Booth v. Vanarsdale, 9 Bush 720. The latter case was a suit against an executor for improvements on real estate. In writing the opinion of the court Judge Lindsey said of the widow's testimony:

> "It does not appear that Mrs. Booth has any interest certain or contingent in the result of this litigation; and subject to the rule recognized in the case of English v. Cropper, 8 Bush 292, she is a competent witness."

In Swineboard v. Bright, 119 Ky. 684, and 116 Ky. 514, a devisee sued the executor to recover a legacy of $1,000.00. It was claimed that this had been paid to her in the testator's lifetime. Both the executor and the residuary legatee were permitted to testify. This was at first upheld, but that opinion was withdrawn, and on a petition for rehearing it was held, that as the executor had no pecuniary interest he was a competent witness; but that the suit was virtually a contest between the plaintiff and the residuary legatee, and the latter would not be permitted to testify for himself as to statements made by the testator.

That ruling was followed in Bannon v. Bannon Pipe Co., 136 Ky. 569, also decided on petition for re-

hearing. It was a suit by an administrator to cancel certain transfers of stock made by decedent in his lifetime to his children, on the ground of mental incapacity and undue influence. While the real question was litigated between the children, if the suit had been successful its effect would have been to bring the questioned stock back into the estate, making it a suit on behalf of the estate.

Kentucky Utilities Co. v. McCarty, 169 Ky. 38, and Cincinnati Times Star v. Clay's Admr., 195 Ky. 470, were suits under section 6, Kentucky Statutes, by a father as administrator to recover for negligence causing the death of a minor son. The recovery after the payment of cost of administration and funeral expenses was for the benefit of certain kindred. As the father in each of these cases was the beneficiary in the case, he was not permitted to testify.

It is very difficult to draw a distinction between the Swineboard and Moore cases, or between the Ratcliffe case and the McCarty and Clay cases. There is no intimation that either the Daniels or the Moore estate was insolvent. If not insolvent why was not a recovery in the Moore case for the benefit of the heirs at law? Why was it not a contest between the defendant and his brothers and sisters in the same sense that the contest in the Swinsboard case was between the defendant and the residuary legatee?

If it should be said that the recovery in the Swineboard case was for the residuary legatee alone and would not enhance the value of the estate, the same argument would hardly apply to Bannon v. Bannon Pipe Co. No will was involved in that case and if the conveyance attacked had been set aside the estate would have recovered the stock. Although the suit was brought against the son of the deceased, nevertheless it was an action to cancel the conveyance named and recover the stock thus conveyed for the benefit of the estate. Unquestionably a much stronger case was presented for the introduction of the evidence than existed in Moore v. Moore.

Again, as it is not intimated that the Daniels estate was indebted in any sum outside of the Ratcliffe claim, and as Miss Simmons was the sole beneficiary of Daniels, is her attitude different from that of the father in the McCarty case, who was the beneficiary and entitled to

the recovery after paying the cost of administration and burial expenses?

In view of the conflict in the decisions and of. the resultant confusion, it is deemed proper to construe the Code provisions, *supra,* in a way to simplify their meaning.

At common law a party could not testify for himself and this was changed by legislative enactment. The Code provisions, *supra,* were amendatory of chapter 37 of the General Statutes, which provided:

> Section 22. "No person shall be disqualified as a witness in any civil action or special proceeding by reason of his interest in the event of the same as party or otherwise. . . . "
>
> Section 25. "No party shall be allowed to testify by virtue of section 22 in any action or special proceeding where the adverse party is . . . the executor or administrator of a deceased person; or as a party claiming as heir or devisee of the deceased person except in the following cases."

Then followed subsections 1, 2, 3, 4 and 5, providing exceptional instances in which such adverse party might testify, these being similar to subsections "c" and "d," *supra.*

Section 22 extended a general qualification of witnesses. Section 25 made certain exceptions to that general provision by disqualifying a party to testify against the personal representative, heir or devisee of a deceased person, but did not disqualify those last named from testifying.

The exceptions in section 25 could not be extended by implication to any one not specifically named therein, consequently under that statute parties interested in the estate could testify in its behalf, while adverse parties could not, except as otherwise specially provided.

For some reason our legislature saw proper to change this statute. In so doing it reversed the order in which the exceptions appear. Section 605, *supra,* makes every person competent to testify in his own behalf subject to the modifications and exceptions in section 606.

Subsection 2 of section 606 is a general declaration of disqualification, referring alike in its application to every person and to all decedents. It disqualifies every person from testifying for himself as to any verbal

statement of or transaction with or act done by or omitted to be done by one who is dead, except as provided therein, and in subsections "c" and "d," *supra*.

It will be observed that neither of those subsections removes persons interested in the estate from the general disqualification first set out, or in terms authorizes their testimony in the cases named.

After the legislature has disqualified every one of a class, subject to certain named exceptions as suggested above, we are not authorized to extend the list of exceptions or to include therein any one not named in the act. To do this would be to exercise legislative authority.

We thus conclude that while under the former statute an heir, devisee or legatee or other interested person could testify on behalf of the estate, that he is not accorded such privilege under the Code provisions, *supra*.

A decedent may have testified either orally or by deposition in his lifetime and died before final trial. The same condition might exist as to an agent. Also one interested in an estate might testify on its behalf without objection as is frequently done. In all of these cases the statute clearly recognizes the right of the adverse party to then testify, though as construed by our decisions such testimony is restricted to matters about which the one interested in the estate has testified. Under our decisions a personal representative who has no pecuniary interest in the result of the trial may testify in behalf of the estate, and in will contests all parties may testify as to the testator's mental condition. This ruling is so well established it will not be disturbed, but it will not be extended.

This of course does not affect the testimony of interested parties concerning matters other than conversations, acts, omissions and transactions upon the part of the deceased. So far as the cases above cited conflict with these views they are not to be regarded as authority.

It appears that several of the witnesses testified to physical facts not connected with any transactions upon the part of decedent, such as seeing the certificates of deposit and having possession thereof shortly before decedent's death. This evidence when disassociated from any transaction with the decedent is competent, but such of it as includes any act or transaction of the deceased is incompetent.

The court erred in permitting the daughters of deceased and their husbands to testify. If otherwise competent either the wife or the husband could testify, but not both.

We think the petition fairly stated a cause of action. The personal representative has a right to reduce the assets of his estate to his possession and to have fraudulent conveyances cancelled. Leigh v. Everhart, 4 T. B. M. 379; 11 R. C. L., p. 209, section 305.

There is no necessity of making the banks upon whom the certificates were drawn parties defendant, as they were not interested in the transaction and are raising no question as to the ownership of the deposits.

The instructions fairly submitted the issues to the jury and the verdict was sufficiently responsive. While it did not state the value of the certificates, the face value was admitted, so there was no issue on that point. We perceive no other errors in the record.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.